UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA REMINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-02901-JAR |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Lisa Reminger's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* For the reasons set forth below, the decision of the Commissioner will be affirmed.

**I.     Background**

Plaintiff applied for disability insurance benefits and supplemental security income benefits in November 2014, alleging disability resulting from systemic lupus erythematosus ("lupus"), trigeminal neuralgia ("TN"), Hashimoto's disease (causing hypothyroidism), and arthritis. After her application was denied at the initial administrative level, she requested a hearing before an administrative law judge ("ALJ"). Following a hearing on February 6, 2017, the ALJ issued a written decision denying Plaintiff's application on March 6, 2017. Plaintiff's

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

request for review by the Appeals Council was denied. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

**II. Facts**

The Court adopts Plaintiff's Statement of Material Facts (Doc. No. 18-1) and Defendant's Statement of Additional Material Facts (Doc. No. 23-2). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

**III. Standards**

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

2

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that she is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

## IV. Decision of the ALJ

The ALJ found that Plaintiff has not engaged in substantial gainful activity since September 10, 2014, and has the severe impairments of lupus and TN, but no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), "except for lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday." (Tr. at 15). Further, the ALJ limited Plaintiff to "occasional stooping, kneeling, crouching, crawling and climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds, and no limits with balancing." (*Id.*). Lastly, the ALJ determined that Plaintiff "must avoid all exposure to extreme temperatures and only occasional exposure to operational controls of moving machinery, unprotected heights, and the use of hazardous machinery." (*Id.*).

The ALJ noted that Plaintiff's medical records on administrative review are limited, consisting primarily of her treatment by her primary care provider, Paul Moniz, M.D. The ALJ determined that Plaintiff did not receive the type of medical treatment indicative of disabling conditions. Rather, the ALJ opined that Plaintiff's lupus was treated conservatively with medication management, and the ALJ noted that the record contained no documented treatment by a rheumatologist after 2012. The ALJ also noted that Plaintiff's pain and numbness related to TN was managed with medication and that, while Plaintiff may have suffered headaches, there was no documentation of specific treatment for those headaches or evaluation by a neurologist.

The ALJ then noted Plaintiff's subjective complaints of fatigue, headaches, and pain. However, the ALJ found that although Plaintiff's impairments could reasonably be expected to

5

cause these symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not fully persuasive." Specifically, the ALJ opined that Plaintiff's complaints were inconsistent with her reported daily activities, including taking care of personal tasks, caring for her disabled son, performing household chores, cooking, cleaning, doing laundry, going shopping, and paying bills. The ALJ further noted that no treating or examining physician had placed any specific long-term limitations on Plaintiff's ability to sit, stand, walk, lift, carry, or do other basic exertional activities. Further, the ALJ determined that there was no evidence in the record of nonexertional pain seriously interfering with or diminishing Plaintiff's ability to concentrate or focus on a task, and there was no evidence that Plaintiff's prescribed medications are not generally effective when taken as prescribed or that they imposed significant adverse effects.

After reviewing Dr. Moniz's medical source statement, the ALJ determined it was entitled to little weight because it was inconsistent with Dr. Moniz's own medical records, as well as the nonmedical evidence. The ALJ opined that the conclusory findings did not articulate an objective medical basis for the extreme limitations indicated and appeared to be based on Plaintiff's subjective complaints rather than any independent medical findings.

The ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as office helper, photocopy machine operator, and furniture rental consultant. Thus, the ALJ found Plaintiff was not disabled as defined by the Act.[2]

---

[2] The ALJ also noted that Plaintiff testified that her husband works full time for the Department of Corrections, which raised "serious questions" about her entitlement to SSI.

## V. Discussion

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. *McCoy v. Astrue*, 648 F.3d 605 (8th Cir. 2011). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

Plaintiff argues that the ALJ's RFC finding is not supported by medical evidence and is erroneous because the ALJ failed to properly weigh the medical opinion evidence provided by Dr. Moniz. Plaintiff also challenges the ALJ's determination that Plaintiff's subjective complaints were not credible and were inconsistent with the record as a whole. Further, Plaintiff challenges the hypothetical question posed to the vocational expert at the hearing because it did not capture the concrete consequences of Plaintiff's disabling conditions.

Defendant argues in response that the ALJ properly evaluated the record, including Plaintiff's subjective symptoms and medical opinion evidence, and properly formulated Plaintiff's RFC based on Plaintiff's credible work-related limitations. Defendant also argues that the hypothetical question posed to the vocational expert was proper because it was formulated based on impairments the ALJ found to be supported by the record as a whole.

**Credibility**

An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, as long as the ALJ gives good reason for doing so. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when

7

the burden of production shifts to the Commissioner at step five." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

In evaluating a claimant's credibility, the ALJ is required to apply the factors from *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), which include the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ may not, however, discount a claimant's allegations of disabling pain simply because the objective medical evidence does not fully support those claims. *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

Here, the ALJ identified several reasons for discounting Plaintiff's credibility. The ALJ acknowledged that although Plaintiff's complaints of pain, fatigue, and headaches could reasonably be expected as a result of Plaintiff's medically determinable impairments, her statements concerning the intensity, persistence, and limiting effects of these symptoms were inconsistent with her reported daily activities. For instance, Plaintiff is able to take care of personal tasks, care for her mentally disabled son, perform household chores, go shopping, and pay bills. Any restrictions were self-imposed, and the ALJ notes the absence of any specific long-term limitations on Plaintiff's ability to stand, sit, walk, lift, carry, or do other basic exertional activities in the medical records.

Next, the ALJ noted that Plaintiff's marginal work history does not depict an individual highly motivated to work. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217–18 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability."); *Woolf v. Shalala,* 3 F.3d 1210, 1214 (8th Cir. 1993) (holding that a claimant's credibility is lessened by a poor work history). The ALJ also determined that the clinical and objective findings in the record are inconsistent with allegations of total debilitation. Specifically, the record was devoid of evidence showing a significant degree of atrophy, muscle spasm, sensory or motor loss, reflex abnormality, gait disturbance, or a significantly reduced range of motion.

The ALJ noted that Plaintiff's treatment for lupus was conservative and that medications appeared to manage Plaintiff's flare-ups, including the fatigue, joint stiffness, and facial rash reflected in Dr. Moniz's treatment records. Similarly, the medical records concerning Plaintiff's TN reflected management of symptoms with medication and surgeries that relieved symptoms. Conditions which can be controlled by treatment are not disabling. *See Schultz v. Astrue,* 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling). Thus, the ALJ properly concluded that Plaintiff's subjective complaints and alleged limitations were not fully persuasive, and his credibility determination is supported by the record as a whole.

**Medical opinion evidence**

Under the applicable social security regulations,[3] the opinion of a treating physician is

---

[3] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions

9

"normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citation omitted). However, the Commissioner may assign little weight to a treating physician's opinion "when it is either internally inconsistent or conclusory." *Id.* "In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007) (citing 20 C. F.R. § 404.1527(d)(2)(i)).

Here, while the ALJ did not entirely discredit the opinion of Dr. Moniz, he did assign little weight to the opinions contained in Dr. Moniz's medical source statement. Specifically, Dr. Moniz, on a pre-printed checkbox form, indicated that Plaintiff experienced severe fatigue, migraine headaches, and muscle weakness, among other symptoms. He further indicated that Plaintiff's symptoms were severe enough to constantly interfere with her attention and concentration, and that she is incapable of even low stress jobs. As explanation, Dr. Moniz wrote that Plaintiff had not yet treated with a rheumatologist.

Dr. Moniz also indicated that Plaintiff would be unable to walk one block without rest, she would be unable to sit for more than 30 minutes at a time, and she could only stand for five minutes at a time before needing to sit down. He also indicated she would be unable to sit, stand, or walk for more than a few minutes at a time. Dr. Moniz opined that Plaintiff was unable to crouch or climb ladders, and that she was minimally able to twist, bend, or climb stairs. He also checked a box that Plaintiff has significant limitations in doing repetitive reaching, handling, and fingering. He recommended that Plaintiff avoid all exposure to extreme cold, heat, humidity, fumes, odors, and gases, and that he expected Plaintiff would likely be absent from work more

---

according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c.

10

than four days per month. Lastly, he describes Plaintiff's other limitations as including severe weakness, instability, memory impairment, vision disturbance, and shortness of breath.

The ALJ concluded that many of Dr. Moniz's opinions were inconsistent with his own treatment records and failed to articulate an objective medical basis for the extreme limitations indicated. Moreover, the ALJ opined that Dr. Munoz's conclusion that Plaintiff is limited to less than sedentary work is unsupported by Plaintiff's own description of daily activities. Ultimately, the ALJ concluded that Dr. Munoz's medical source statement was based on Plaintiff's subjective complaints, rather than any independent medical findings.

After careful review, the objective medical evidence of record does not support Dr. Moniz's opinion concerning Plaintiff's limitations. The medical records reflect that Plaintiff treated with Dr. Moniz for lupus, TN, hypothyroidism, arthritis, and other complaints. Plaintiff regularly reported mild or moderate fatigue during her visits with Dr. Moniz, often related to her lupus or hypothyroidism. Plaintiff complained of face pain and numbness related to TN, which she reported was relieved by medication. Plaintiff sometimes complained of headaches, but was never specifically treated for them. In early 2016, Plaintiff fell down the stairs, resulting in reports of pain and limited range of motion.

The medical records reflect that Dr. Moniz consistently re-filled Plaintiff's existing medications and recommended that Plaintiff lose weight. Several medical records indicate that Plaintiff was either treating with or had plans to treat with a rheumatologist for her lupus. However, no records from any treating rheumatologist were provided to the ALJ, and Plaintiff stated at the hearing that she had not received treatment from a rheumatologist since 2012.

Overall, it appears that Dr. Moniz's medical source statement was based primarily on Plaintiff's subjective complaints. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014)

11

(holding that the Commissioner may give treating physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence). Although Plaintiff experienced symptoms related to lupus and TN, Dr. Moniz consistently refilled her existing prescriptions, indicating that her symptoms were well-controlled by those medications. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (internal citation omitted).

Further, as previously discussed, Plaintiff's subjective complaints are not entirely credible, and her failure to treat with a rheumatologist weighs against the credibility of her subjective complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility"). Accordingly, because the ALJ's determination affording Dr. Moniz's medical source statement little weight is supported by good reasons and substantial evidence, the Court defers to his determination. *Cobb v. Colvin*, No. 2:13CV0115 TCM, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (internal citations omitted)

**Vocational Expert**

Lastly, Plaintiff challenges the hypothetical question posed to the vocational expert at the hearing as "not supported by substantial evidence." (Doc. No. 18 at 14). This argument depends entirely on Plaintiff's other claims, the substance of which are addressed earlier in this opinion. As the Court has determined that the RFC finding by the ALJ is supported by substantial evidence in the record, the hypothetical posed to the vocational expert was properly formulated The conclusion that Plaintiff could perform work existing in significant numbers in the national economy is likewise supported by substantial evidence in the record.

12

**Conclusion**

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 18th day of March, 2019.

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**